[Civil No. 4623. Filed June 14, 1944.]

[149 Pac. (2d) 837.]

EULALIA VELARDE DE GALAVIZ, ISABEL GALAVIZ, GREGORIO GALAVIZ, JOSE GALAVIZ, RICARDO GALAVIZ, RUBEN GALAVIZ and EUGENIA GALAVIZ, Petitioners, v. THE INDUSTRIAL COMMISSION OF ARIZONA, and RAY GILBERT, FRED E. EDWARDS and EARL G. ROOKS, as Members of The Industrial Commission of Arizona, and KENNECOTT COPPER CORPORATION, a Corporation, Respondents.

Messrs. Moeur & Moeur, for Petitioner.

Mr. H. S. McCluskey and Mr. Fred O. Wilson, for Respondent Industrial Commission.

Messrs. Fennemore, Craig, Allen & Bledsoe, for Respondent Kennecott Copper Corporation.

ROSS, J.—The dependents, consisting of the surviving wife and children, of Gregorio Galaviz have brought here for review the award of compensation by the Industrial Commission for the death of the said Galaviz while he was in the performance of his duties as an employee of the Kennecott Copper Corporation.

The question presented for our decision is the rule for determining the compensation that should be awarded the dependents of Galaviz.

At the time Galaviz met his death he was a regular employee of the Kennecott Copper Corporation, and had been for more than three years, unless a two weeks' vacation taken by him broke the continuity of his employment. The vacation period was from June 12 to June 26, 1942. He resumed his employment on June 27, and the fifteenth day thereafter, on July 12, 1942, met his death while at work.

There is no question of the right of his wife and children to have compensation. The only question for

us to decide is the measure of such compensation. The commission awarded compensation to the dependents on the basis of employment for less than thirty days, and it is the contention of such dependents that they should be compensated on the basis of continuous employment for thirty or more days before the employee was killed.

The determination of this question is made most difficult by the language employed by the Legislature in undertaking to prescribe a rule for the ascertainment of compensation. The statutory rule is different according to the time the injured or killed employee has been employed when the accident occurs. If he has been employed a month or more, his average wage during that time is made the yardstick by which the compensation is computed. If he has not been employed for thirty days before the accident causing his injury, the law provides another rule to govern in ascertaining the compensation.

It is apparent that the reason for adopting a different rule when the employment has been over a period of time as long as thirty days or more, than when it is less, is that the experience in the former case furnishes data upon which an average wage may reasonably be calculated, whereas in the latter there is no such data, and another rule must be used in calculating compensation.

The commission made its award on the theory that the workman when killed had been an employee only since June 27, the date he resumed his work after his vacation. Section 56-952, Arizona Code Annotated 1939, or that portion we deem important, is so worded that no one, not even a King Solomon, can know from its language what is meant, unless he is advised or informed as to what was evidently intended. We quote such portion:

"*Measure of compensation—Average monthly wage
—Computation.*—Every employee of any employer
subject to the provisions of this article, who shall be
injured by accident arising out of and in the course
of employment, or his dependents, as hereinafter de-
fined, in case of his death, shall receive the compen-
sation herein fixed, on the basis of average monthly
wage at the time of injury. The term 'monthly wage'
shall mean the average wage paid during and over
the month in which such employee is killed or injured.
If the injured or killed employee has not been con-
tinuously employed for the period of thirty (30) days
immediately preceding the injury or death, the aver-
age monthly wage shall be such sum as, having re-
gard to the previous wage of the injured employee,
or of other employees of the same or most similar
class working in the same or most similar employ-
ment in the same or neighboring locality, reasonably
represents the monthly earning capacity of the in-
jured employee in the employment in which he is
working at the time of the accident. . . . "

The confusion or doubt arises over what the drafter
of this section meant by the expressions "average
wage," "monthly wage," and "average wage paid
during and over the month in which such employee is
killed or injured." This section makes the "*average
monthly wage*" at the time of injury the basis of com-
pensation.

█ The deceased for twelve or more months pre-
vious to the accident had received wages from the
Kennecott Copper Company by whom he had been
employed in the mines, and notwithstanding the aver-
age wage over that period, or an assumed average
of more than thirty days, should be the basis of com-
pensation, the statute says: "Monthly wage shall
mean the average wage paid during and over the
month in which such employee is killed or injured."
We construe this to mean that because of the em-
ployee's death it is not possible to determine what his
wages would amount to had he lived and worked a

full month, and, therefore, such wages, for the purpose of compensation, should be calculated on the "amount which he would have received during the month if he had been continuously employed." *Brisendine* v. *Skousen Bros.*, 48 Ariz. 416, 62 Pac. (2d) 326, 328, 112 A. L. R. 1089.

In other words, "monthly wage" means average wage in computing compensation to the dependents of a deceased employee. This construction gives sense and meaning to this language: Every employee . . . or his dependents, . . . in case of death, shall receive the compensation herein fixed, on the basis of *average monthly wage at the time of injury.*"

■ Suppose the Copper Company, after a temporary suspension of all operations for repairs, should have resumed its business of mining and called back into its service the former employees, among them Galaviz, and before thirty days the latter should have been killed, would it be contended he was a new employee, and that the compensation of his dependents should be based on the wages he was paid after the resumption of work. The facts show he did not quit his employment and that he was not discharged. Although during his vacation period he drew no wages, he considered himself, and the company considered and treated him, as an employee. He was not rehired after his vacation but took up his work where he left off. He was not a new employee, but an employee who had worked for the company over a year, and whose average wage during that time could be easily ascertained.

The award is set aside.

STANFORD and TRUMAN, JJ., concur.

NOTE: Because of the illness of Chief Justice Mc-ALISTER, the Honorable W. C. TRUMAN, Judge of the Superior Court of Pinal County, was called in to sit in his place and stead.