NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JEFFREY CANTRELL, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

KROGER DBA FRY'S FOODS STORES OF ARIZONA, *Respondent Employer*,

KROGER CO, *Respondent Carrier.*

No. 1 CA- IC 24-0060

FILED 09-25-2025

Special Action - Industrial Commission
ICA Claim No. 20222210544
Carrier Claim No. 4A2207TFTRF-0001
The Honorable Kevin B. Berkowitz, Administrative Law Judge

**AFFIRMED**

COUNSEL

Taylor & Associates PLLC, Phoenix
By Thomas C. Whitley, Nicholas C. Whitley
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Ritsema Law, Phoenix
By Kelly F. Kruegel
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Veronika Fabian joined.

---

**F O S T E R**, Judge:

¶1        Petitioner Jeffrey Cantrell challenges the Industrial Commission of Arizona's ("Commission") calculation of his average monthly wage ("AMW") after he sustained an injury while working. The Commission based its calculation of Cantrell's AMW on his actual wage at the time he was injured. Cantrell argues that the Commission should have used a different wage. This Court affirms the Commission's award.

## FACTS AND PROCEDURAL HISTORY

¶2        Cantrell worked for Respondent Kroger as a cashier at a Fry's grocery store ("Fry's"). In July 2022, Cantrell sustained a work injury that affected his neck, right shoulder and right wrist. Fry's accepted Cantrell's workers' compensation claim, and he received medical care. Following an evidentiary hearing, the Commission found Cantrell's neck, shoulder and wrist injuries were medically stationary and had resulted in a permanent partial impairment.

¶3        The Commission set Cantrell's AMW for the injuries at $2,679.65. The Commission derived this AMW from Cantrell's actual wages earned during the six months before the injury and averaged them to a monthly amount. Cantrell disagreed with this amount and argued that his AMW should be $3,745.73, an amount based on the salary he earned in 2017 when he suffered a previous workplace injury while working in a different position at Fry's.

¶4        At the time of the 2017 injury, Cantrell was employed as an assistant manager. Cantrell contended that his workers' compensation claim for the 2017 injury remained open in 2022 and resulted in the modification of his position from assistant manager to cashier. He argued that the AMW for the 2022 claim should relate back to the 2017 AMW.

2

Cantrell contended that despite currently working as a full-time cashier, he "had no control over the wages he earned during his second injury as he was continuing his employment with [Fry's] during his recovery[.]" Therefore, "his wages at the time of his second injury [were] not truly reflective of his earning capacity."

**¶5**    The AMW calculation was referred for an evidentiary hearing with an Administrative Law Judge ("ALJ"). At that hearing, Cantrell testified about his work and wage history with Fry's including his time as an assistant manager. Cantrell also testified he tried, unsuccessfully, to obtain other positions within Fry's that met his work restrictions. Cantrell urged the ALJ to disregard the entire period he worked as a cashier because his prior injury limited his earning capacity. The ALJ rejected Cantrell's argument and issued an award affirming the lower AMW award.

**¶6**    Cantrell sought reconsideration, and the ALJ affirmed the award. Cantrell then filed this statutory special action. This Court has jurisdiction under A.R.S. §§ 12-120.21(A)(2) and 23-951(A).

## DISCUSSION

**¶7**    This Court reviews a workers' compensation award for the lawfulness of the award. A.R.S. § 23-951(A). This Court will "uphold an ALJ's factual findings if they are reasonably supported by the evidence." *Munoz v. Indus. Comm'n*, 234 Ariz. 145, 148, ¶ 9 (App. 2014). But questions of law are reviewed *de novo*. *See Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). The burden of establishing the AMW falls on the injured worker. *Zapien v. Indus. Comm'n*, 12 Ariz. App. 334, 336 (1970).

**¶8**    The Commission determines a worker's disability benefits by using the worker's AMW "at the time of injury." A.R.S. § 23-1041(A). The AMW is "the average wage paid during and over the month in which the employee [was] . . . injured." A.R.S. § 23-1041(G). This statute creates a presumptive 30-day wage period for determining the AMW. *Elco Veterinary Supply v. Indus. Comm'n*, 137 Ariz. 46, 47–48 (App. 1983) ("[W]ages earned during the 30 days preceding the injury are the presumptive average monthly wage.").

**¶9**    However, when the evidence shows that the presumptive wage base does not realistically reflect the injured worker's earning capacity, the ALJ has broad discretion to use a wage base greater than one month—an expanded wage base. *Morse v. Indus. Comm'n*, 213 Ariz. 575, 577, ¶ 8 (App. 2006). Seasonal employment, intermittent employment "or unrepresentative wages during the month before the injury" may justify an

expanded wage base. *Id.* Additionally, the Supreme Court has recognized that an expanded wage base should not include periods when a worker is unable to work due to factors outside the worker's control. *Pettis v. Indus. Comm'n*, 91 Ariz. 298, 303 (1962). Therefore, time off due to layoffs, voluntary removal from the labor market or time taken off by personal choice are not subtracted. *See id.* Use of an expanded base must be based on evidence that shows the earnings during the 30 days preceding injury do not truly reflect the AMW. *Davis v. Indus. Comm'n*, 134 Ariz. 293, 296 (App. 1982). But an "ALJ has discretion to choose the appropriate formula for calculating the average monthly wage" from "numbers easily obtained," without "extrapolat[ing] or speculat[ing] about unearned wages." *Morse,* 213 Ariz. at 577, ¶ 9 (quoting *Lowry v. Indus. Comm'n*, 195 Ariz. 398, 401, ¶¶ 10–12 (1999)). Here, the Commission did not use the presumptive wage base for Cantrell's 2022 AMW. Instead, the Commission used an expanded base derived from actual wages Cantrell earned in the six months before the 2022 injury.

**¶10**         Cantrell maintains his 2017 AMW should be his 2022 AMW because his 2022 wages were reduced through no fault of his own. Cantrell cites *Pettis* to support his argument. But this Court distinguishes between factors outside an employee's control, like the employer shutdown in *Pettis*, 91 Ariz. at 298, 303, and factors that are within the employee's control, *Miller v. Indus. Comm'n,* 113 Ariz. 52, 54 (1976) ("The test is whether the employment not the worker is intermittent or erratic."). Cantrell testified that with his 37 years in the grocery industry there were "many other things that [he] could have done" besides cashiering. The ALJ found that this testimony supported the premise that Cantrell could have sought alternative employment to accommodate his restrictions. Unlike the employee in *Pettis*, Cantrell controlled the circumstances of his employment. Since Cantrell voluntarily stayed in the cashier role, sufficient evidence supports the ALJ's findings that the AMW calculation was appropriate.

**¶11**         Cantrell also cites *Swift Transp. v. Indus. Comm'n*, 189 Ariz. 10 (App. 1996), to justify his wage calculation. There, a truck driver spent several months in probationary training at a reduced wage, then suffered a workplace injury one week into regular employment. *Id*. at 10. The Commission excluded the probationary period and used only one week of regular employment wages to calculate the AMW. *Id*. at 11. This Court held that upon completion of the training, the driver took a new position that controlled the AMW calculation. *Id*. at 12. *Swift* does not help Cantrell. Rather, it supports the Commission's rejection of the 2017 AMW because Cantrell held the cashier role for five years after transitioning to the

position. Reasonable evidence supports the use of the cashier wage rather than the manager wage. This Court discerns no abuse of discretion in the Commission's finding that Cantrell failed to meet his burden to establish a different AMW.

## CONCLUSION

¶12      This Court affirms the award.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:       JR